UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDGAR TEJEDA, ET AL.                                CIVIL ACTION

VERSUS                                              NO. 22-2758

JONATHAN DIXON, ET AL.                              SECTION "A" (5)

### ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 77)** filed by defendants, Sentry Select Insurance Co. and Fifth Wheel Transportation, LLC. Oppositions to the motion have been filed by the plaintiffs, Edgardo Tejeda, in his capacity as the court-appointed curator of his son, Edgar Tejeda, and Sierra Lherisse, on behalf of her minor son, Edgar Tejeda, Jr., and defendants, Jonathan Dixon and CorePointe Insurance Co. The motion, submitted for consideration on November 13, 2024, is before the Court on the briefs without oral argument.[1]

### I.

The tragic events giving rise to this litigation occurred on the evening of July 4, 2021, at about midnight. Edgar Tejeda was a pedestrian near the 6000 block of Almonaster in New Orleans, Louisiana, when he was struck by a 2012 Peterbilt truck that was owned and operated by the defendant, Jonathan Dixon.[2] Dixon and Tejeda knew each other from around the neighborhood. As a result of the accident, Tejeda

---

[1] Oral argument has been requested but the Court is not persuaded that it would be helpful in resolving the issues presented.

[2] The specific Peterbilt truck that Dixon was driving that evening was actually owned by his father. (Rec. Doc. 64-4, Statement at 13); (Rec. Doc. 64-2, Dixon deposition at 206).

suffered life-threatening and permanently disabling personal injuries. It is Dixon's contention that Tejeda stepped out in front of the truck and that there was nothing that Dixon could have done to avoid the accident.³

On August 24, 2020, which was several months prior to the accident, Dixon and Fifth Wheel Transportation, LLC became parties to a contractual agreement whereby Dixon had agreed to contract to Fifth Wheel the truck (and qualified drivers, presumably himself) that was involved in the accident. (Rec. Doc. 52-4 at 23, Independent Contractor Agreement). Fifth Wheel was therefore a "trucking company lessee," a term used frequently in the jurisprudence.

A policy issued by Sentry Select Insurance Co. provided coverage when the truck was being used in Fifth Wheel's business. The named insured on the policy is Fifth Wheel Transportation, LLC. (Rec. Doc. 77-7 at 56, Motor Carrier Declarations).

Separately, CorePointe Insurance Co. issued two non-trucking insurance policies, one primary and one excess, covering the owner/operator of trucks leased to Fifth Wheel but expressly excluding coverage "while [the truck is being] used *in the business* of anyone to whom the [truck] is rented."⁴ (Rec. Doc. 52-5, Policy at CIC

---

³ The specter of contributory fault looms large in this case if the jury chooses to credit Dixon's testimony regarding the events of July 4, 2021. Tejeda's permanent brain injury renders him incapable of providing evidence to refute Dixon's version of what occurred. The Court recently denied Dixon's motion for summary judgment, the granting of which would have required the Court to determine as a matter of law that Tejeda was 100 percent at fault for his own injuries and that Dixon was completely free from fault. (Rec. Doc. 82, Order and Reasons).

⁴ The contract with Fifth Wheel did not involve relinquishing physical possession of the privately-owned truck, which remained with Dixon. Because there would be occasions when Dixon operated the truck while not working for Fifth Wheel, the trucking company lessee, a separate non-trucking insurance policy was required. Apparently, this arrangement is typical

0040) (emphasis added).

Earlier this year CorePointe sought to avoid coverage by moving for summary judgment based on the contention that the evidence of record demonstrates that when Dixon hit Tejeda on the evening of July 4, 2021, he was operating the truck "in the business" of Fifth Wheel thereby triggering the foregoing non-trucking use exclusion, which applies to CorePointe's primary and excess policies. That motion was met with opposition not only from the plaintiffs but also from Sentry Select because Sentry Select's policy confers "insured" status to the lessor of a covered auto, *i.e.*, Dixon, when the leased auto "is used in [Fifth Wheel's] business as a 'motor carrier' for hire." (Rec. Doc. 77-7 at 63, Sentry Select "Who Is An Insured(1)(d)). Sentry Select naturally took issue with CorePointe's implicit suggestion that the Sentry Select policy alone should cover the accident.

On September 3, 2024, the Court issued its Order and Reasons denying CorePointe's motion for summary judgment and providing detailed reasons explaining why the non-trucking use exclusion was not satisfied. (Rec. Doc. 73, Order and Reasons). The Court had not been called upon to study Sentry Select's policy in conjunction with its ruling on CorePointe's motion for summary judgment but the Court observed in a footnote that coverage under the CorePointe and Sentry Select policies may be mutually exclusive such that if one of the policies provided coverage the other perforce would not provide coverage. (*Id.* at 3 n.3). But the Court also questioned whether there could perhaps be some factual scenario where coverage under both

---

in the trucking industry.

policies could be triggered. No party has squarely engaged that question.

Seizing upon the conclusions that the Court reached when denying CorePointe's motion for summary judgment regarding the applicability of its non-trucking use exclusion, Sentry Select now moves for summary judgment on the issue of coverage contending that under the undisputed facts of this case, Fifth Wheel is not liable to the plaintiffs, which means that Sentry Select, as Fifth Wheel's insurer, is not liable to the plaintiffs.[5]

A jury trial is scheduled for August 11, 2025. (Rec. Doc. 74, Minute Entry). A telephone settlement conference with Magistrate Judge North is scheduled for January 8, 2025. (Rec. Doc. 75, Order).

The parties' competing contentions regarding coverage under Sentry Select's policy are addressed below.

**II.**

The issue before the Court is whether there exists a viable pathway to coverage for Tejeda's injuries under the Sentry Select policy. The policy provides auto liability coverage for damage sums that an "insured" must pay. So the hunt for coverage begins with finding an "insured."

---

[5] When CorePointe moved for summary judgment on the applicability of its policy exclusion in order to avoid coverage, CorePointe was seeking judgment as a matter of law on an issue for which it would bear the burden of proof at trial. (Rec. Doc. 73, Order and Reasons at 3 n.4). Therefore, CorePointe had to show *affirmatively* via credible evidence the absence of a genuine issue of material fact, such that it would be entitled to a directed verdict at trial because no reasonable jury could find for the non-moving party. *Preis v. Lexington Ins. Co.*, 508 F. Supp. 2d 1061, 1067–68 (S.D. Ala. 2007), *aff'd,* 279 F. App'x 940 (11th Cir. 2008) (citing *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991)).

The Court begins with Dixon, who is not a named insured on the Sentry Select policy. Dixon does not qualify as an additional "insured" under either the policy's permissive user clause or the lessor clause. (Rec. Doc. 77-7, Who Is An Insured at (1)(b)(1), (d)). This point is not disputed by any of the opposing parties.

Fifth Wheel is the named insured on the policy. With Dixon not qualifying as an additional insured under Sentry Select's policy, coverage can only attach if some basis exists to find Fifth Wheel legally responsible for Dixon's actions on the evening of July 4, 2021.

Two potential bases of liability are easily rejected. First, no party disputes Sentry Select's contention that the policy's MCS-90 endorsement does not apply given that Dixon was not transporting property at the time of the accident. *See Canal Ins. Co. v. Coleman*, 625 F.3d 244 (5th Cir. 2010). Second, there is no evidence that any direct fault on the part of Fifth Wheel, *e.g.*, negligent training and/or supervision, contributed to the accident on the evening of July 4, 2021. Therefore, the only pathway to coverage via Fifth Wheel as an insured on the Sentry Select policy is vicarious liability for Dixon's conduct. There are two potential bases for vicarious liability: 1) under state law, if Dixon was an employee of Fifth Wheel *and* was acting in the course and scope of that employment on the evening of July 4, 2021 when he hit Tejeda, and/or 2) under federal law, if Fifth Wheel was the statutory employer of Dixon, who was operating the leased equipment (his truck) when the accident occurred.

Feeling pretty confident that the plaintiffs cannot establish vicarious liability under state law, Sentry Select's position is that the state case of *Jackson v. Wise*, 249 So. 3d 845 (La. App. 1st Cir. 2018), holds that the issue of vicarious liability must be

determined under state law and not federal law. And since the Court has previously rejected CorePointe's contention that Dixon was acting "in the business of" Fifth Wheel when he left the tint shop for the final time (on the evening of July 4, 2021) in the Peterbilt truck, Sentry Select maintains that under state law Fifth Wheel cannot be vicariously liable for Dixon's actions.

Arguments raised in CorePoint's opposition memorandum have persuaded the Court that neither of these contentions is necessarily correct. Statutory employment under the Federal Motor Carrier Safety Regulations may derive from the "responsibility and control" regulations found in 49 C.F.R. § 376.12(c)(1). *Morales v. OK Trans, Inc.*, No. 19-94, 2024 WL 1348405, at *2 (S.D. Tex. Mar. 29, 2024). Section 376.12(c)(1) mandates that trucking companies include provisions in their leases that give the lessee motor carrier "exclusive possession, control, and use of" and "complete responsibility for the operation of the equipment for the duration of the lease." *Sentry Select Ins. Co. v. Drought Trans., LLC*, No. 15-890, 2017 WL 5382168, at *2 (W.D. Tex. May 3, 2017). The regulation imposes a *functional* employment relationship between a driver and the lessee carrier, regardless of whether the driver is actually an employee or independent contractor of the lessee. *Id.* A carrier may be deemed the statutory employer of a driver, and therefore liable for injuries caused by the driver's negligence, if 1) the carrier does not own the truck that caused the accident, 2) the company is using the truck in interstate commerce, and 3) the company does not employ the driver. *Id.*; *Morales*, 2024 WL 1348405, at *2 (citing *Drought Trans.*, 2017 WL 5382168, at *2; *Sharpless v. Sim*, 209 S.W.3d 825, 829 (Tex. App. 2006); *McKeown v. Rahim*, 446 F. Supp. 3d 69, 78-79 (W.D. Va. 2020)).

The *Jackson* decision does not elevate state law over federal law nor could it do so. *Jackson* merely recognizes that the federal statutory employee doctrine does not impose strict liability on a motor carrier simply because of the contractual relationship that exists between the motor carrier and the trucking lessor. There must be more than just the lease contract. This is particularly true when the owner/driver is acting in direct violation of the prohibitions of his lease when the accident occurs, which was the case in *Jackson*.

In this case, Dixon was not acting in violation of his contract with Fifth Wheel when the accident occurred. He was driving the Peterbilt truck to get gas in anticipation of a trip for Fifth Wheel in which he would be traveling in interstate commerce. In the Court's prior ruling the Court determined that CorePointe had not established as a matter of law that Dixon was acting "in the business of" Fifth Wheel on the evening of July 4, 2021, when he struck Tejeda so as to trigger the non-trucking use exclusion of its policy. The Court was not engaging in fact-finding when concluding that CorePointe had not satisfied its burden of proof on the exclusion that it was relying upon.

The Court continues to question whether coverage under the CorePointe and Sentry Select policies is mutually exclusive or whether there could perhaps be some factual scenario where coverage under both policies could be triggered. What is certain is that at least one of the policies will cover the percentage of fault, if any, that the jury apportions to Dixon for the accident. The jury's factual determinations will drive the coverage decisions in this case.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 77)** filed

by defendants, Sentry Select Insurance Co. and Fifth Wheel Transportation, LLC, is **DENIED**.[6]

December 13, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[6] The parties are advised that the Court will <u>not</u> entertain any other dispositive motions until all parties have participated in good faith in their upcoming settlement conference with Magistrate Judge North.